ORIGINAL

Approved: _____
JARROD L. SCHAEFFER
Assistant United States Attorney

19 MAG . 2359

Before:  THE HONORABLE GABRIEL W. GORENSTEIN
Chief United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - X
                              :
UNITED STATES OF AMERICA      :    **SEALED COMPLAINT**
                              :
        - v. -                :    Violations of 18
                              :    U.S.C. §§ 1341, 1343,
                              :    1956(a), and 1028A.
SALVATORE ARENA,              :
                              :    COUNTY OF OFFENSE:
            Defendant.        :    NEW YORK
                              :
- - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

KEVIN LECLAIR, being duly sworn, deposes and says that he is a Special Agent with the United States Attorney's Office for the Southern District of New York ("SDNY"), and charges as follows:

## COUNT ONE

### (Mail Fraud)

1.  From at least in or about January 2014 through at least in or about March 2019, in the Southern District of New York and elsewhere, SALVATORE ARENA, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the United States Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, such matters and things, and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the person to whom they were addressed, such matters and things, to wit, ARENA executed a scheme whereby he

misappropriated tax payments remitted by certain clients of a particular accounting firm located within the Southern District of New York (the "Accounting Firm"), and in connection therewith and in furtherance thereof, ARENA transmitted and caused to be transmitted by United States mail tax forms containing false and fraudulent pretenses, representations, or promises in furtherance of a scheme to misappropriate client funds to himself.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT TWO

### (Money Laundering)

2.   From at least in or about January 2013 through at least in or about March 2019, in the Southern District of New York and elsewhere, SALVATORE ARENA, the defendant, knowing that the property involved in certain financial transactions represented proceeds of some form of unlawful activity, conducted and attempted to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity as defined in Title 18, United States Code, Section 1956(c)(7), to wit, the mail fraud charged in Count One of this Complaint, in violation of Title 18, United States Code, Section 1341, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of these proceeds of specified unlawful activity, to wit, ARENA obtained tax refund checks by diverting tax payments made by certain clients of the Accounting Firm, misappropriating clients' funds while disguising the proceeds as legitimate tax refunds issued to ARENA.

(Title 18, United States Code, Sections 1956(a) and 2.)

## COUNT THREE

### (Wire Fraud)

3.   From at least in or about January 2013 through at least in or about March 2019, in the Southern District of New York and elsewhere, SALVATORE ARENA, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to

2

wit, ARENA executed a scheme whereby he misappropriated tax payments remitted by certain clients of the Accounting Firm and others, and in connection therewith and in furtherance thereof, ARENA transmitted or caused to be transmitted electronic mail, telephone calls, and wire transfers containing false and fraudulent pretenses, representations, or promises.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR

### (Aggravated Identity Theft)

4.     From at least in or about January 2013 through at least in or about March 2019, in the Southern District of New York and elsewhere, SALVATORE ARENA, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, ARENA possessed and used identifying information of others, including names and signatures, during and in relation to the mail fraud charged in Count One of this Complaint and the wire fraud charged in Count Three of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

5.     I have been a Special Agent in the SDNY since approximately June 2018.  Prior to serving as a Special Agent in the SDNY, I was a Special Agent with the Treasury Inspector General for Tax Administration for over two years, and before that I served as a Special Agent with the U.S. Department of State's Diplomatic Security Service for over four-and-one-half years.  I have been personally involved in the investigation of this matter and I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

BACKGROUND

6.     Based on my participation in this investigation, as well as my discussions with other law enforcement agents, I have learned, in substance and in part, the following:

a.     State taxpayers in New York may make payments to the New York State Department of Taxation and Finance ("NYSDTF") for state tax amounts that such taxpayers expect to owe for a particular period ("Estimated Tax"). Such payments may be made on a periodic basis, *e.g.*, monthly or quarterly. Federal taxpayers may make similar Estimated Tax payments with respect to anticipated federal tax amounts.

b.     State Estimated Tax payments typically are made by sending to the NYSDTF an Estimated Tax payment together with New York State Form IT-2105. The Form IT-2105 designates the taxpayer account against which an Estimated Tax payment should be credited and requires, among other things, the (*i*) name, (*ii*) social security number or taxpayer identification number, and (*iii*) address of the taxpayer to receive credit for an Estimated Tax payment.

c.     Federal Estimated Tax payments may be made by sending to the Internal Revenue Service ("IRS") an Estimated Tax payment together with a Form 1040-ES Payment Voucher. The Form 1040-ES Payment Voucher also requires, among other things, the (*i*) name, (*ii*) social security number or taxpayer identification number, and (*iii*) address of the taxpayer to receive credit for an Estimated Tax payment.

d.     When calculating a taxpayer's tax liability for a given year, federal and state tax authorities base their calculations of any tax due in part on Estimated Tax payments that have been credited to a taxpayer's tax account. If prior Estimated Tax payments exceed the amount of tax owed by a taxpayer for a particular year, the taxpayer may be entitled to a refund of any excess amount. Refunds to taxpayers may take several forms, including wire transfers to a taxpayer's bank account or checks mailed to the taxpayer's physical address.

7.     Based on my review of records obtained from the Accounting Firm, I have learned, among other things, that from at least in or about 1999, up to and including September 2018, SALVATORE ARENA, the defendant, worked for the Accounting Firm and purported to provide tax and other services to certain of the Accounting Firm's clients. ARENA's duties involved, among other things, preparing various kinds of tax returns, including

4

corporate and individual tax returns, and facilitating tax payments.

8.    Based on New York State corporate records showing that SALVATORE ARENA, the defendant, controls at least two companies for which his home address is the official business address, as well as information received from the Accounting Firm indicating that ARENA continued to solicit clients following his termination from the Accounting Firm in or about September 2018, I believe that ARENA continues to purport to provide tax services to clients.

<u>THE DEFENDANT'S TAX REFUND SCHEME</u>

9.    Based on my participation in this investigation, including my review of records obtained from the Accounting Firm, certain financial institutions, and federal and state tax authorities, I have learned, among other things, the following about the mail fraud scheme perpetrated by SALVATORE ARENA, the defendant:

        a.    During the period from in or about January 2014 through at least in or about March 2019, ARENA requested that certain clients deliver to him checks for the payment of federal and state Estimated Tax amounts, for the purpose of allowing ARENA to make Estimated Tax payments on the clients' behalf.

        b.    Instead of submitting checks provided by those clients as Estimated Tax payments on their behalf, as he had represented to those clients he would do, however, ARENA diverted the funds to make Estimated Tax payments credited against his own state tax account.

        c.    In each of the tax years the tax years for 2014, 2015, 2016, 2017, and 2018, ARENA received for himself state tax refund checks, the amounts of which were based, in part, on Estimated Tax payments credited against ARENA's state tax account.

        d.    ARENA cashed or deposited those state tax refund checks, thereby laundering the proceeds of his fraud by disguising such proceeds as refunds for prior overpayments of his state taxes.

10.   For instance, based on my review of financial and tax records concerning a particular client of the Accounting Firm ("Client-1"), including records obtained from the Accounting Firm and the NYSDTF, I have learned, among other things, the following:

a.   On or about August 25, 2014, Client-1 provided SALVATORE ARENA, the defendant, with a check made out to "NYS ESTIMATED TAX" in the amount of $7,000.

b.   ARENA subsequently mailed to the NYSDTF a Form IT-2105 and the check provided by Client-1.  However, the Form IT-2105 did not request that the Estimated Tax payment be credited against Client-1's state tax account.  Rather, the Form IT-2105 listed ARENA's name and social security number, which directed the NYSDTF to credit the Estimated Tax payment against ARENA's state tax account.

c.   Based on my review of records obtained from the NYSDTF, I know, among other things, that ARENA requested and received a refund for the 2014 tax year, the amount of which reflected, in part, the misappropriated $7,000 Estimated Tax payment.

11.   Similarly, based on my review of financial and tax records concerning another client of the Accounting Firm ("Client-2"), including records obtained from the Accounting Firm and the NYSDTF, I have learned, among other things, the following:

a.   On or about September 5, 2016, Client-2 provided SALVATORE ARENA, the defendant, with a check in the amount of $125,000 for the payment of state Estimated Tax.

b.   ARENA subsequently mailed to the NYSDTF a Form IT-2105 and the check provided by Client-2.  However, the Form IT-2105 did not request that the Estimated Tax payment be credited against Client-2's state tax account.  Rather, the Form IT-2105 listed ARENA's name and social security number, which directed the NYSDTF to credit the Estimated Tax payment against ARENA's state tax account.

c.   Based on my review of records obtained from the NYSDTF, I know, among other things, that ARENA requested and received a refund for the 2015 tax year, the amount of which reflected, in part, the misappropriated $125,000 Estimated Tax payment.

d.   Based on my review of records obtained from federal tax authorities, I also know that ARENA deducted on his federal tax return for the tax year 2015 as a personal payment of state and local taxes the $125,000 he misappropriated from Client-2.

12.   Based on my review of tax records concerning SALVATORE ARENA, the defendant, obtained from the NYSDTF, I have learned, among other things, the following:

a.   For each of the years 2014, 2015, 2016, and 2017, SALVATORE ARENA, the defendant, filed state tax returns that claimed an entitlement to a refund of state taxes paid.

b.   For each of those tax years, ARENA was issued a state tax refund check.  Those state tax refund checks reflected, in part, Estimated Tax payments for the relevant tax years that had been credited against ARENA's state tax account.

13.   Based on my review of records obtained from federal tax authorities, I have learned, in sum and substance, that SALVATORE ARENA, the defendant, executed a similar scheme with respect to his federal taxes.  For instance:

a.   On or about October 13, 2015, a particular client of the Accounting Firm ("Client-3") provided ARENA with a check made out to the "United States Treasury" in the amount of $11,800. The memorandum section of the check provided by Client-3 confirmed that purpose of the check was to pay "Taxes."

b.   ARENA subsequently mailed the check to the IRS, along with a Form 1040-ES Payment Voucher.  The Form 1040-ES Payment Voucher submitted by ARENA did not request that the Estimated Tax payment be credited against Client-3's federal tax account.  Rather, the Form 1040-ES Payment Voucher listed ARENA's name and social security number, which directed the IRS to credit the Estimated Tax payment against ARENA's federal tax account.

c.   Similarly, on or about May 2, 2017, Client-1 provided ARENA with a check made out to the "United States Treasury" in the amount of $10,000.

d.   ARENA mailed the check and a Form 1040-ES Payment Voucher to the IRS.  The Form 1040-ES Payment Voucher submitted by ARENA listed ARENA's name and social security number, which directed the IRS to credit the Estimated Tax payment against ARENA's federal tax account.

e.   For each of the years 2014, 2015, 2016, and 2017, ARENA filed federal tax returns that claimed an entitlement to a refund of federal taxes paid.  ARENA subsequently received federal tax refund checks, the amounts of which reflected, in part, misappropriated Estimated Tax payments.

14.   Based on my review of financial records obtained from a particular financial institution located in the Southern District of New York ("Bank-1"), I know, among other things, that SALVATORE ARENA, the defendant, cashed or deposited federal and state tax refund checks into accounts he controlled at Bank-1.

15.   Based on my review of financial and tax records concerning SALVATORE ARENA, the defendant, I also know, among other things, that deposits and transaction activity in the accounts mentioned in ¶ 13 significantly exceeded the income SALVATORE ARENA, the defendant, reported to state and federal tax authorities for the years 2014 through 2017.

THE DEFENDANT'S FALSE PAYMENT SCHEME

16.   Based on my participation in this investigation, including my review of records obtained from the Accounting Firm, certain financial institutions, and federal and state tax authorities, I have learned, among other things, the following about the wire fraud scheme perpetrated by SALVATORE ARENA, the defendant:

a.   During the period charged in Count Three, ARENA directed certain clients of the Accounting Firm to remit funds to him for the purpose of allowing ARENA to make tax payments on behalf of those clients.

b.   Instead of using those funds to make tax payments on behalf of clients, ARENA retained the funds for his own personal use.

c.   In particular, ARENA used the funds for personal expenses, including travel to Australia and Italy, as well as purchases of food, wine, and expensive clothing.

17.   Based on my review of New York State corporate records, I have learned, in substance and in part, that SALVATORE ARENA, the defendant, formed a particular corporation ("Company-1") in or about November 2012.   ARENA was the sole incorporator of Company-1, and the original address provided for Company-1 was the same address as that of the Accounting Firm.   At a certain time following the incorporation of Company-1, ARENA changed the address of Company-1 to his home address in Queens, New York ("Address-1").

18.   Based on my review of financial records obtained from Bank-1, I have also learned, among other things, that, during the time period relevant to Count Three, Company-1 maintained a bank

account ("Account-1") at Bank-1.  SALVATORE ARENA, the defendant, is the sole signatory for Account-1.

19.  Based on my review of communications between SALVATORE ARENA, the defendant, and clients of the Accounting Firm, as well as financial records concerning Account-1, I have learned, among other things, the following:

a.  From in or about 2013, up to and including in or about 2018, SALVATORE ARENA, the defendant, while working at, among other places, the offices of the Accounting Firm in the Southern District of New York, contacted various clients of the Accounting Firm concerning future tax payments, including over the telephone and through email.

b.  ARENA told the clients, in sum and substance, that they should pay certain tax amounts, and he requested that the clients make such payments to Company-1.  ARENA represented that funds received by Company-1 would be used to make tax payments on the clients' behalf.

c.  ARENA did not, however, use the funds only to make tax payments on behalf of clients.  Based on my review of financial records concerning Account-1, ARENA received approximately $670,450 in Account-1 from clients for the purpose of making tax payments, but only approximately $25,884 was paid to federal or state tax authorities on behalf of clients from Account-1.

20.  For instance, based on my review of financial and tax records concerning a particular client of the Accounting Firm ("Client-4"), including records obtained from the Accounting Firm and the NYSDTF, I have learned, among other things, the following:

a.  On or about November 1, 2016, SALVATORE ARENA, the defendant, sent Client-4 and email stating, in sum and substance, "Let's do 9,000 and the account and routing is listed below[.] The account# is . . . and the routing# is . . . the nam[e] of the account is [Company-1]. The amount is $9000.00 . . . ."  The account number provided by ARENA was associated with Account-1.

b.  On or about November 4, 2016, in accordance with ARENA's instructions, Client-4 wired $9,000 into Account-1.  In substance and in part, the reason for the wire provided by Client-4 was a "2015 Tax Payment."

c.  Based on my discussions with federal and state tax authorities, I know that ARENA did not make any federal or state tax payments for the 2015 tax year on behalf of Client-4.

IDENTITY THEFT DURING AND IN RELATION TO THE SCHEME

21.   Based on my participation in this investigation, as well as my review of records obtained from other law enforcement agents, I know that SALVATORE ARENA, the defendant, possessed and used identifying information of others, including names and signatures, in connection with the fraud charged herein.   In particular:

a.   ARENA caused state tax refund checks for certain clients of the Accounting Firm to be mailed to him, as the clients' tax preparer.

b.   After receiving the state tax refund checks and without obtaining clients' authorization, ARENA endorsed clients' names on the checks and made them payable to Company-1.   ARENA then deposited the checks into Account-1.

c.   Based on my review of financial records concerning Account-1, ARENA did not cause Company-1 to make payments to clients for the amounts of the state tax refund checks.   Rather, the funds in Account-1 were used primarily for ARENA's personal expenses.

22.   Additionally, based on my review of tax records obtained from the NYSDTF, I have learned, among other things, the following:

a.   For the 2016 tax year, SALVATORE ARENA, the defendant, submitted to the NYSDTF a Form IT-201, which is a state Resident Income Tax Return, on behalf of Client-2.

b.   ARENA completed the section of the Form IT-201 that requires information regarding the tax preparer who completed the form, including the name, address, signature, and employer identification number of the tax preparer.

c.   ARENA did not supply his own information on the form; rather, ARENA provided the name, address, signature, and employer identification number of a particular accountant ("Accountant-1") whom ARENA knew at the Accounting Firm.

d.   ARENA did not have authorization to provide Accountant-1's identifying information.

WHEREFORE, deponent respectfully requests that an arrest warrant be issued for SALVATORE ARENA, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

KEVIN LECLAIR
Special Agent
United States Attorney's Office for the
Southern District of New York

Sworn to before me this
___ day of March, 2019

THE HONORABLE GABRIEL W. GORENSTEIN
Chief United States Magistrate Judge
Southern District of New York

11